IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

CARL M. REID, III,                              :
                                                :
            Plaintiff,                          :
                                                :
vs.                                             :
MIDDLE FLINT AREA COMMUNITY                     :      CIVIL ACTION FILE NO.: _____
SERVICE BOARD d/b/a MIDDLE FLINT                :
BEHAVIORIAL HEALTHCARE                          :      **JURY TRIAL DEMANDED**
                                                :
            Defendant.                          :
                                                :
                                                :

## COMPLAINT FOR DAMAGES

COMES NOW, Carl M. Reid, III, Plaintiff in the above captioned action, and files this

his Complaint for Damages, against the named Defendant and respectfully shows this Court as

follows:

## PARTIES

1.      Plaintiff resides in Americus, Sumter County, Georgia.  Plaintiff is a citizen of the State

of Georgia and the United States of America.

2.      At all times relevant, Plaintiff was an employee of Middle Flint Area Community Service

Board d/b/a Middle Flint Behavioral Healthcare (hereafter, "Middle Flint"), via its relationship

with HealthCare Staffing Incorporated (hereafter, "Healthcare Staffing").

3.      Although it has many facilities and locations, Middle Flint's primarily conducts its

business within the Albany Division of the Middle District of Georgia.

4.      Middle Flint is a community service board, and state designated agency of the

Department of Behavioral Health and Developmental Disabilities.   Middle Flint provides

healthcare and treatment programs designed to provide behavioral health, addictive disease, and developmental disability services to individuals and families within the eleven Georgia counties it serves.

5.      Middle Flint may be served a copy of the Complaint and Summons via its registered agent and CEO/Director, Beth Reagan, at 415 North Jackson Street, Americus, Georgia 31709.

## JURISDICTION

6.      This is a cause of action arising out of Plaintiff's employment with Defendant and is based on claims of a violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5); and the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. and under section 504, as well as Under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et. seq. ("ADA").

7.      This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.; and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et. seq.

8.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391(b)(1) and (2).

9.      Plaintiff has exhausted his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC")[1].  The EEOC issued to Plaintiff a Dismissal and Notice of Rights letter from the EEOC dated September 22, 2020 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.  *See Exhibit A, attached hereto.*

---

[1] EEOC Charge No. 410-2020-05029

10.     Based upon the aforesaid facts, the Defendant is subject to the personal jurisdiction of this Court.

## VENUE

11.     All of the actions complained of herein occurred in Americus, Sumter County, Georgia. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

12.     Venue is proper in this judicial district because Plaintiff was jointly employed by Middle Flint. The decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

13.     Americus, Georgia is located within the Middle District of Georgia.

## GENERAL ALLEGATIONS

14.     Plaintiff is a 54-year-old African-American male.

15.     In his early twenties, Plaintiff was diagnosed with severe depression, bi-polar disorder, and generalized seizure disorder.

16.     When Plaintiff experiences a seizure, most times there is insufficient advance warning.

17.     Plaintiff's seizures have been controlled by medication, but can flare up at times, because of excessive stress and anxiety.

18.     At all relevant times, Plaintiff did not hold a valid driver's license because of his seizure disability.

19.     At the direction and instruction of Middle Flint employee, Mr. Willie Greene ("Mr. Greene"), on or about May 4, 2018, Plaintiff applied for employment with Middle Flint by submitting an application through a nationwide staffing company, Healthcare Staffing.

20.     Middle Flint hired Plaintiff to work as a Health Services Technician ("HST") and assigned Plaintiff to work from its New Beginnings facility located at 952 Anthony Drive in Americus, Sumter County, Georgia.

21.     At all relevant times, Middle Flint was aware of Plaintiff's seizure disorder and knew he did not hold a valid driver's license because of his seizure disorder.

22.     During his first year of employment with Middle Flint, Plaintiff attended various training courses to earn his certificate to become a Certified Peer Specialist ("CPS").

23.     After receiving his CPS certification, Middle Flint promoted Plaintiff to a Certified Peer Specialist I ("CPS-I") position.

24.     Based on his education, training and experience, most of which took place onsite at the New Beginnings facility, Plaintiff was qualified to work as a CPS-I.

25.     Prior to October 2019, Plaintiff had received good evaluations from Middle Flint.

26.     On October 17, 2019, Plaintiff contacted local law enforcement authorities because a client of Middle Flint's threatened to cause bodily harm to Plaintiff's immediate supervisor, Ms. Ramona Price ("Ms. Price").

27.     At the instruction and direction of Ms. Price, Plaintiff summonsed the police who subsequently took the client into custody.

28.     On or about October 31, 2019, Plaintiff was verbally disciplined by Mr. Greene. Mr. Green told Plaintiff he should not have contacted law enforcement and further that it was a violation of Middle Flint's policy to seek the assistance of law enforcement in that situation.

29.     As further punishment for seeking the assistance of law enforcement, Mr. Greene disciplined Plaintiff by issuing a written disciplinary action which called for a two-day

suspension and the transfer of Plaintiff to a new job site called New Life Addiction Recovery Support Center ("New Life").

30.     Plaintiff immediately voiced an objection to the proposed disciplinary action.

31.     Plaintiff especially disagreed with the unilateral decision of Mr. Greene to transfer Plaintiff to a new job site, which was farther away from Plaintiff's home.

32.     After Mr. Greene refused to withdraw the disciplinary action, Plaintiff lodged a second complaint by contacting Beth Reagan ("Ms. Reagan"), CEO/Director of Middle Flint.

33.     Plaintiff told Ms. Reagan the transfer to New Life was an unwarranted adverse employment action.

34.     Plaintiff told Ms. Reagan that placing him farther away from the New Beginnings job site made it all the more difficult for Plaintiff to get to and from his work site.

35.     Plaintiff further explained to Ms. Reagan that Middle Flint knew at the time of his hiring, because of his seizure disorders, that he had to walk to work or catch a ride with a co-worker or family member.

36.     Plaintiff did not want to be transferred to New Life because that facility was located approximately farther away from Plaintiff's home.

37.     Ms. Reagan agreed to speak with Mr. Greene and further assured Plaintiff he would not be subjected to an adverse employment action.

38.     On November 22, 2019, Mr. Greene told Plaintiff the two-day suspension for the October 17th incident was withdrawn but Plaintiff would still be transferred to the New Life facility "based on programmatic need and not adverse action."

39.     Plaintiff again told Mr. Greene and Ms. Reagan that he wanted to remain at the New Beginnings facility because it was within walking distance of Plaintiff's home.

40.     Mr. Greene and Ms. Reagan were aware that Plaintiff suffered from generalized seizure disorder and, as such, that Plaintiff was unable to operate a vehicle.

41.     Plaintiff again complained to Mr. Greene and Ms. Reagan that the transfer to New Life was an adverse employment action because of his disability.

42.     Despite his multiple complaints, Plaintiff was transferred to the New Life facility on or about November 25, 2019.

43.     Plaintiff missed several days of work in December 2019 due to recurrent seizure episodes.

44.     As a purported accommodation for Plaintiff's complaints of an adverse employment action, Ms. Reagan initiated a ride share program whereby employees of New Life could volunteer to take Plaintiff to and from work.

45.     Despite the ride share program, there were several days when no employee of New Life volunteered to pick Plaintiff up, forcing Plaintiff to walk the additional almost two miles to get to New Life.

46.     At the time of the transfer to New Life, Plaintiff was certified to work as a CPS-I.

47.     In early January 2020, Plaintiff's new supervisor at New Life, Jennifer Castro ("Ms. Castro"), began demanding that Plaintiff apply for a Certified Peer Specialist – Addictive Disease ("CPS-AD") position.

48.     To obtain a CPS-AD certification, Plaintiff would have been required to attend a week-long CARES Academy, which consists of 40 hours of in-class training and assignments, in the metro Atlanta area.  Plaintiff would also have to take and pass an exam at the end of the training course.

49.     Plaintiff told Ms. Castro that he was unable to commit himself to applying for and starting the CARES Academy because he had several seizures during the prior month and because his neurological physician suggested Plaintiff not travel because of the recent repeated seizure episodes.

50.     On January 13, 2020, Ms. Castro told Plaintiff that his new job required him to attend offsite Advisory board meetings after hours and that he would have to find his own way to get to and from those meetings.

51.     Plaintiff reminded Ms. Castro that he did have driving privileges because of his seizure disorder and that Middle Flint knew that before they transferred him to the position at New Life.

52.     On January 14, 2020, Ms. Castro threatened to terminate Plaintiff if he did not apply for the CPS-AD CARES Academy.

53.     Later that day, on January 14, 2020, Plaintiff suffered a seizure while at the New Life facility and was transported to a local hospital.

54.     Plaintiff was hospitalized for several days thereafter.

55.     On January 21, 2020, Plaintiff met with personnel from Middle Flint and Healthcare Staffing.

56.     In that meeting, Plaintiff was told he could temporarily perform administrative duties at New Life.

57.     On January 27, 2020, Plaintiff met with his neurologist, Dr. Kalpesh Patel ("Dr. Patel").

58.     Dr. Patel provided a fitness for duty certification which stated Plaintiff "had recurrent seizure and anxiety episodes and so was advised not to drive or travel at this time.  He can perform his daily routine activity."

59.     Plaintiff provided Middle Flint and Healthcare Staffing with a copy of the fitness for duty certification from Dr. Patel.

60.     Plaintiff continued to work at New Life, successfully performing his administrative duties from January 28, 2020 – January 29, 2020.

61.     On January 30, 2020, Plaintiff was contacted by Ms. Domonique Serfoss ("Ms. Serfoss"), an employee of Healthcare Staffing, and told that Middle Flint, specifically Mr. Greene, would not allow Plaintiff to return to work at New Life until Plaintiff's travel restriction had been lifted by Dr. Patel.

62.     Plaintiff reminded Ms. Serfoss that he was performing administrative duties, which did not require him to travel.

63.     Ms. Serfoss advised Plaintiff that Mr. Greene told her the position he was placed into at New Life required Plaintiff to travel.

64.     Plaintiff then asked Ms. Serfoss to reinstate him to his original CPS-I position at New Beginnings.

65.     At the time Plaintiff asked to return to his former position at New Beginnings, Middle Flint had not yet filled that position by a replacement employee.

66.     Ms. Serfoss told Plaintiff that all employment decisions were within the discretion of Middle Flint.

67.     Plaintiff made several attempts to speak with Middle Flint personnel about the travel restriction and his disability.

68.     To avoid communicating with him, Middle Flint employees blocked Plaintiff's emails and refused his phone calls.

69.     Plaintiff's last day of employment with Middle Flint was January 29, 2020.

## THEORIES OF RECOVERY

### Count I – Violation of the Rehabilitation Act

70.     Plaintiff re-alleges and incorporates by reference into Count I paragraphs 1 – 69, above.

71.     Middle Flint is an entity that receives federal financial assistance and is a covered entity for purposes of § 504 of the Rehabilitation Act.  As such, Middle Flint is prohibited from discriminating against any "qualified individual with a disability."

72.     Plaintiff is, and was at all times pertinent hereto, a qualified individual with a disability. Specifically, he was qualified to perform the essential functions of the CPS-I position, with or without a reasonable accommodation.

73.     Plaintiff's particular disability is generalized seizure disorder, which substantially limits one or more of his major life activities and/or major bodily functions.  Thus, Plaintiff is an individual with a disability under the Rehabilitation Act.

74.     Middle Flint violated section 504 of the Rehabilitation Act by effectively terminating Plaintiff because of his actual disability, his perceived disability, or his record of impairment.

75.     As a result of Middle Flint's actions, Plaintiff has suffered damages, including but not limited to the loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

76.     Plaintiff is entitled to his attorneys' fees and costs incurred in this matter pursuant to 29 U.S.C. § 794a.

77.     Plaintiff is also entitled to any and all relief permitted under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., including equitable relief.

### Count II – Violation of the Americans with Disabilities Act

78.     Plaintiff re-alleges and incorporates by reference into Count I paragraphs 1 – 77, above.

79.     Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111 in that he has generalized seizure disorder, Middle Flint perceives him as having a disability, he has the requisite education to perform and can perform the essential functions of a CPS-I, and held the CPS-I position for more than a year prior to the adverse employment action.

80.     Middle Flint is an "employer" within the meaning of 42 U.S.C. § 12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years.

81.     Plaintiff was an employee of Middle Flint within the meaning of 42 U.S.C. § 12111(4). Alternatively, Plaintiff was jointly employed by Middle Flint and Healthcare Staffing.

82.     Prior to and at the time that Middle Flint terminated Plaintiff's employment, Plaintiff was qualified for employment as a CPS-I.

83.     On January 30, 2020, Middle Flint, due to Plaintiff's actual or perceived disability, terminated its employment relationship with Plaintiff.  Specifically, Middle Flint's discriminatory actions included but were not limited to (1) involuntarily placing Plaintiff into a new position that adversely affected Plaintiff's opportunities because of his actual or perceived disability within the meaning of § 121112(b)(1); (2) not making reasonable accommodations for the known physical limitations of Plaintiff, an otherwise qualified individual with a disability who was an employee of Middle Flint, despite the fact that doing so would not impose an undue hardship upon the operation of Middle Flint's business within the meaning of § 12112(b)(5)(A); and (3) denying employment opportunities to Plaintiff based on Middle Flint's need to make reasonable accommodations for his physical impairments within the meaning of   § 12112(b)(5)(A).

84.    Middle Flint terminated and disqualified Plaintiff from employment with them solely because Plaintiff has seizures, which make him unable to drive or travel.

85.    Middle Flint made no individualized assessment to determine whether Plaintiff could perform the essential functions of the job of CPS-I, or whether a reasonable accommodation would enable him to be employed by Middle Flint, as is required under the ADA.

86.    Middle Flint's termination and disqualification of Plaintiff on the basis of his disability and Middle Flint's failure to make an individualized assessment to determine whether Plaintiff could be employed or whether a reasonable accommodation would enable him to be employed by Middle Flint violated the ADA.

87.    Plaintiff has been damaged by Middle Flint's violation of the ADA inasmuch as Plaintiff has been unable to use his education and training, and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

88.    Plaintiff is entitled to his attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

89.    Plaintiff is further entitled to any and all relief permitted under the ADA, including equitable relief.

## **Count III – Violation of Title VII of the Civil Rights Act**

90.    Plaintiff re-alleges and incorporates by reference into Count I paragraphs 1 – 89, above.

91.    The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq., in the nature of disability discrimination.

92.    Plaintiff is a member of a protected Class based on his disability:  seizures.

93.    Plaintiff was discriminated against based on his disability in violation of Title VII of the Civil Rights Act.

94.     Plaintiff was discriminated against in the terms and conditions of his employment, including that he was involuntarily transferred to New Life to a job for which Defendant knew would require Plaintiff to have a longer commute to this work site and further knew it would require Plaintiff to travel despite the fact that Plaintiff was unable to drive due to his seizures.

95.     Plaintiff was discriminated against in the terms and conditions of his employment when Defendant refused to provide Plaintiff with a reasonable accommodation by allowing Plaintiff to continue performing his administrative duties.

96.     Plaintiff complained about the discrimination when he filed his EEOC Charge in November 2019.

97.     Plaintiff is also entitled to relief under federal law for retaliation because Plaintiff engaged in protected opposition to disability discrimination, he suffered an adverse action subsequent to the protected activity, and a causal link exists between the protected activity and the adverse action.

98.     As a direct and proximate result of the foregoing acts, Plaintiff has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

### Prayer for Relief

WHEREFORE, Plaintiff prays for damages in an amount to be determined at trial, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems just and proper.

Respectfully submitted, this 21st day of December, 2020.

WATSON SPENCE LLP
Attorneys for Plaintiff

By:    /s/ Alfreda L. Sheppard
Georgia State Bar No.: 525106
320 Residence Avenue
Post Office Box 2008
Albany, Georgia 31702-2008
229-436-1545 Telephone
229-436-6358 Facsimile
asheppard@watsonspence.com